IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINIDAD GOMEZ, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:06-CV-01303 BLW |
| | ) |
| v. | ) **MEMORANDUM DECISION** |
| | ) **AND ORDER** |
| SWANSON, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Chief United States District Judge Anthony W. Ishii has reassigned this prisoner civil rights action, brought under 42 U.S.C. § 1983, to the undersigned judge. (Docket No. 31.) Currently pending are Defendants' motions to dismiss for failure to exhaust administrative remedies. (Docket Nos. 27, 28.) After reviewing the parties' briefing, the Court has determined that this matter will be decided on the basis of the written record without oral argument.

For the reasons set forth below, the Court concludes that Plaintiff failed to exhaust his administrative remedies, and this case shall be dismissed without prejudice.

### BACKGROUND

On December 28, 2005, Plaintiff Trinidad Gomez, a pretrial detainee,

slipped and fell in the visiting area of the Bob Wiley Detention Facility in Visalia, California, and correctional officers soon discovered that his hand restraints could not be unlocked. Plaintiff alleges that one of the officers, Deputy Swanson, retrieved bolt cutters and attempted to cut off the restraints, but he managed only to twist Plaintiff's arms behind his back. The supervisor on duty, Sergeant Elliott, warned Deputy Swanson not to cut Plaintiff's skin, to which Deputy Swanson replied that he didn't care, and deputies Borgioli and Avalos allegedly told Deputy Swanson that he should just cut off Plaintiff's arms. The restraints were removed, but Plaintiff claims that his back had been seriously injured in the process.

Over the next few days, Plaintiff requested a "medical request form" and "sick call slips," but he was told that none were available at that time, and he was not taken to the infirmary. Plaintiff also contends, without elaboration, that he was denied a jail grievance form "when this incident occurred." (Second Amended Complaint, pp. 2.) Regardless, correctional officers informed him that they had consulted with medical staff about his complaints, and they gave him a non-prescription pain reliever. Five days after the incident, Plaintiff was personally examined by a doctor, who increased the dosage of the over-the-counter medication and prescribed a mild muscle relaxant. Plaintiff claims that he was eventually diagnosed as having a disk protrusion and a cracked disk in his

**MEMORANDUM DECISION AND ORDER - 2**

lower back.

Plaintiff was transferred from the county jail to a state prison in April 2006. Four months later, in August 2006, he wrote a letter to Sergeant Elliott at the jail asking for "copies of everything regarding this incident" and "to have a grievance form sent to [him] as well." (Second Amended Complaint, Exhibit B.) He asserts that he did not receive any response.

Plaintiff initiated the present action on September 20, 2006, claiming that the officers used excessive force in removing the restraints and that the jail staff's failure to promptly treat his injuries showed deliberate indifference to his serious medical needs, violating his rights as a pretrial detainee under the Due Process Clause of the Fifth and Fourteenth Amendments. After Plaintiff filed a Second Amended Complaint, United States Magistrate Judge Dennis L. Beck found that "the complaint appears to state cognizable claims for relief for the use of excessive force against defendants Swanson, Elliott, Borgioli, and Avalos." (Docket No. 15, pp. 1-2.) Judge Beck ordered the Marshal to serve the Second Amended Complaint on these defendants. (Docket No. 17.)

Elliott, Swanson, and Avalos are represented by the County Counsel for the County of Tulare. They have filed an Answer to the Second Amended Complaint and a Motion to Dismiss Complaint for Failure to Exhaust Administrative

**MEMORANDUM DECISION AND ORDER - 3**

Remedies. (Docket Nos. 20, 28.) With the assistance of separate counsel, Defendant Borgioli has submitted her own Answer and a Motion to Dismiss on the same ground. (Docket Nos. 22, 27.) Plaintiff has responded to these motions, which are now ripe for the Court's decision.

## STANDARD OF LAW

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), an inmate is required to exhaust all available administrative remedies within the jail or prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). Proper exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). In *Jones*, the Supreme Court noted that the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance

**MEMORANDUM DECISION AND ORDER - 4**

system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. at 103. In *Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California prison grievance system. *Id*. at 86-87. The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 87.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). In deciding a motion to dismiss for failure to exhaust, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving a lack of exhaustion. *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005).

## DISCUSSION

Defendants have submitted affidavits establishing the grievance process that was in place at the jail when Plaintiff was held there. The first step required the inmate to discuss the situation informally with the Housing Officer. (Declaration of Lieutenant Eddie Huerta, ¶ 4.) If that discussion did not result in a satisfactory outcome, the inmate was required to submit a Form SD-122 to the Shift Sergeant

**MEMORANDUM DECISION AND ORDER - 5**

within five days of "any specific complaint." (Huerta Decl., ¶ 4, Exhibit A.) If the inmate still had not received the relief that he desired, he had to appeal to the Facility Manager within three days. *Id*. At that point, all available administrative remedies would have been exhausted. *Id*. A Sheriff's officer has searched the department's records for the period of time that Plaintiff was incarcerated at the county jail, and he has found no record of a grievance request or a grievance form filed by Plaintiff. (Declaration of Lieutenant Thomas Sigley, ¶ 4.)

Plaintiff does not deny that the jail had an established system and that he failed to complete the process, but he nevertheless argues that he should be allowed to proceed with his excessive force claim because was prevented by jail officials from pursuing any administrative remedies. (Second Amended Complaint, p. 16.) In particular, he contends that he was "denied a grievance form when this incident occurred." (Second Amended Complaint, pp. 2, 15.) He has also submitted a letter that he allegedly wrote to Sergeant Elliott after he was transferred to a state prison, requesting, among other things, "to have a grievance form sent to [him] as well." (Second Amended Complaint, Exhibit B.) The essence of Plaintiff's argument appears to be that while the jail's administrative procedure was theoretically in place, it was not "available" to him. *See* 42 U.S.C. § 1997e(a) (requiring a prisoner to exhaust "such administrative remedies as are

**MEMORANDUM DECISION AND ORDER - 6**

available").

Plaintiff is correct that some courts have deemed an administrative remedy to be unavailable where prison officials have refused to provide grievance forms or have otherwise prevented the prisoner from pursuing a potential remedy. *See, e.g.*, *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 529 (3rd Cir. 2003). For instance, in *Dale v. Lappin*, the prisoner alleged that he had requested grievance forms several times at two different facilities, but he was never given the proper forms to submit. 376 F.3d at 655-56. He set forth in detail the precise steps he took, and he identified the employees from whom he requested the forms: his counselor, his case manager, the on-duty floor officer, and members of his unit team. *Id*. at 656. He also identified "the specific form he requested, the BP-8, which is the first form the Bureau of Prisons requires inmates to complete in order to submit a grievance." *Id*. The Seventh Circuit concluded that in the face of these specific allegations, the defendants had failed to carry their burden to prove that remedies were available, and it vacated the district court's order granting summary judgment to the defendants on that basis. *Id*.

While this Court has no reason to doubt that under some circumstances a potential administrative procedure may not be available to an inmate as a practical

**MEMORANDUM DECISION AND ORDER - 7**

matter, the evidentiary specificity supporting that type of claim in *Dale* is wholly lacking in the present case.  Although Plaintiff does offer some particular facts regarding his requests for "sick call slips" in the immediate aftermath of the bolt-cutting incident, he mentions only in the broadest of terms that he was "denied a grievance form when this incident occurred [at the time of injury]."  He does not say when he requested the form, to whom he directed the request, or whether he repeated the request to any other jail personnel, perhaps a supervisor, after it was allegedly denied.  Further, Plaintiff remained at the county jail for several more weeks, yet he has not provided any facts from which the Court could conclude that tried to reassert his right to pursue an internal complaint during that time.  *See Jones v. Smith*, 266 F.3d 399, 399 (6th Cir. 2001) (holding that dismissal was proper because the plaintiff failed to allege that he made other attempts to obtain a form or file a grievance without a form).

     Even if the Court were to assume that Plaintiff's letter to Sergeant Elliott was sent and received in August 2006, a question the Court need not answer, it does not support his claim.  In the letter, Plaintiff does not explain to Sergeant Elliott how he unsuccessfully attempted to grieve the excessive force issue, and it seems logical that a prisoner who had been previously thwarted by his jailors

would note that information.[1] Instead, he merely asks for "copies of everything regarding this incident" and "to have a grievance form sent to [him] as well." (Second Amended Complaint, Exhibit B.) This suggests that the letter represents the first time that Plaintiff actually requested a form. If so, it was several months out of time and not in compliance with the jail's established procedure. (Huerta Decl., Exhibit A.)

Similarly, Plaintiff has also failed to support the bare bones claim in his Opposition to Defendant's Motion to Dismiss that he suffers from mental health problems. (Docket No. 32, pp. 7-8.) He has neither come forward with evidence illustrating the nature and severity of those problems, nor has he alleged facts showing precisely how his mental status was an issue in failing to exhaust. He does not mention any mental health issues in his Second Amended Complaint, and none are evident from the Court's review of that pleading or other filings in this case.

Magistrate Judge Beck notified Plaintiff that "[i]f defendants make an unenumerated 12(b) motion to dismiss for failure to exhaust administrative remedies ... [and] if plaintiff does not submit his own evidence in opposition, the

---

[1] This would also apply to the letter that Plaintiff allegedly sent to Judge Darryl B. Ferguson on August 16, 2006. In that letter, Plaintiff does not mention any difficulty that he had in pursuing a claim internally through the jail. (Second Amended Petition, Exhibit B.)

**MEMORANDUM DECISION AND ORDER - 9**

court may conclude that plaintiff has not exhausted administrative remedies and the case will be dismissed." (Docket No. 18, ¶ 4.) The claims that Plaintiff has offered in this case to excuse his failure to comply with the county jail's grievance procedure are easy to allege in generalities, and it was incumbent upon him to provide some specific evidentiary support to at least create an issue of material fact. He has not done so.

Accordingly, the Court concludes that the Defendants have carried their burden to prove that Plaintiff failed to exhaust his available remedies. This case shall be dismissed.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendant Paula Borgioli's Motion to Dismiss Complaint for Failure to Exhaust Administrative Remedies (Docket No. 27) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss Complaint for Failure to Exhaust Administrative Remedies (Docket No. 28), filed by Defendants Swanson, Elliott, and Avalos, is GRANTED.

IT IS FURTHER ORDERED that this cause of action shall be DISMISSED without prejudice

.

       DATED:  **April 22, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 11**